Mr. Shapiro, now before we begin the time running, there's a problem here with respect to confidentiality. Your blue brief marks all sorts of case citations and quotations from cases as being confidential. It's difficult to understand how those could have been marked confidential in the district court. Why are those marked confidential? Your Honor, we were, may it please the court, Dan Shapiro for Sun Pharmaceuticals and Careco Pharmaceuticals. Your Honor, the specifics of what was marked confidential, we can address, and if you are instructing us to go back and revisit that, we will. What we were trying to do... Well, actually, I'm suggesting that we are considering issuing a show cause order as to why you shouldn't be sanctioned for marking things as confidential, which can't properly be marked confidential under the rules. Your Honor, it's difficult to address the specifics without the specific points, but what we were trying to do was to keep a confidential, the business issues that were... What's that have to do with case citations? Well, only to the extent that they were, I suppose, in support of a particular business point that we were making, Your Honor. How do the rules allow you to mark that? Take, for example, on page 25 of the blue brief, there's a citation to the United States versus International Building Company, 345 U.S. 502 with a parenthetical. How can that possibly be confidential? In fact, the parenthetical is a quote from the case. The only way that that would be confidential, Your Honor, is if it was, if the point was in support of an apparent business issue that we were trying to protect from open disclosure. But Judge, I'd be more than happy to go back and revisit the confidentiality designation. Well, I think, well, the first thing I want you to do is within two weeks, I want you to submit a response to a show cause order as to why it shouldn't be sanctioned for confidential and there's no basis in the rule. We'll do that. That's the first thing. The second thing relates to other markings that, and this applies to both parties. You've marked all parts of this agreement as confidential. I don't see how we can possibly have an argument or write an opinion about this case if these materials are treated as confidential. Is there, is the fact of this agreement and the language of the agreement, is that proprietary? Well, the issue is how the various generic manufacturers are relating to each other in a very competitive market among them. And so, for example, the settlement agreements that may have been reached between other generic manufacturers other than my client's son, we've never seen. And so disclosing any portion of the settlement agreement according to our opponent here and we don't disagree would be confidential, which is why we haven't seen them. In fact, we've asked for them and they haven't been given to us. We're not talking about the other agreements. We're talking about whether there's a court decision here, whether there's an injunction. And apparently there was an injunction. Yes. The question is whether it was a court decision. And, you know, that's the heart of this case. How can we have an argument? How can we write a decision without talking about the language of the agreements that the two of you entered into? The best that I can do here, Your Honor, is to tell you that we go back and revise what we've submitted to take all of that into account. And I understand the instruction that you were telling us to respond to a show clause order, which, of course, we will do. Well, the show clause order is not going to cover the parts of the agreement that were more confidential. The show clause order is directed to the case citations, case quotations, and legal argument. That's not covered by the district court confidentiality order. The portions of the agreement presumably are covered by the confidentiality order. So that's not a violation of the rules, but it makes it impossible for us to consider this case if the two of you insist on marking those parts of the agreement as confidential. Can I ask the court for, without consulting? Do the two of you want to consult for a moment? Absolutely. Sure. We want to do that. Thank you, Judge. Do you want us to consult now and come back? Yes, why don't you just move away from the podium and consult about it. Your Honor, may it please the court? We'll just remove the confidentiality designations with respect to the settlement agreement, the license agreement, all of it. And request that the court consider the confidentiality issues as we move forward. But we're not going to designate any of it as confidential for these purposes. Well, why don't you then file new public briefs which remove the confidentiality designations and make that stuff public? We'll do that. OK. All right. You can begin your argument now in the merits. Your Honor, may it please the court? Dan Shapiro for Sun Pharmaceuticals and Careco Pharmaceuticals, the appellants here. The two things happened in the district court that require reversal, we believe. And there are one or two documents that we want to bring the court's attention to, which we think focus these issues. First, an injunction was issued by the district court. Does this case come down to whether, excuse me again, my voice is kind of shaky. But does this case come down to whether a consent judgment is a decision? No. I think, in part, the case can be decided on whether a consent judgment is a decision. And that would dispose of the case on its own. But it doesn't come down to that. Because there are prefatory issues having to do with due process before you get to those contract construction issues. But if I were to say a consent judgment is not a decision of a court on the merits of decision, then that would resolve the case. I believe that that would resolve the case. It would then make the injunction improper. It would make the injunction improper because it would have been issued on an understanding of a consent order that was incorrect. And so that there would be no basis for the injunction to issue. That's the way we understand it. Why do we even reach that issue? Do we have to reach that issue? I thought your first argument would be there was no consent here. So the court couldn't have acted on something that wasn't consensual. Exactly. And called it a consent. Is that your first argument? I mean, that's why I was a little confused by the emphasis on due process. Due process just means you go back and have a hearing with the judge on some sort of evidentiary issue on an argument. An agreement that both sides are saying is unambiguous. So I guess, so could you sort of outline what your argument is then? Is that your argument? Your principal argument? No consent, therefore you can't have a consent order? There are several reasons to reverse. That's one of them. There can't be a consent order without consent. The absence of a consent order here was the subject of dispute. So that's not a due process issue. That's just a legal issue. Agreed. Why is that different from the contract issue? Because I thought that under our decision in Corvette, if you'd agreed to an injunction, if these other people were enjoined by a consent judgment, that there wouldn't be anything wrong with the district court reframing the agreement to include that agreed provision. So why is there a separate argument about whether the district court has exceeded its authority? In Corvette, as we read Corvette, what the court said was the court can't go back and add material terms to a contract that have not been consented to. Well, that's why I'm asking whether it's the same issue as to what the agreement provides. If you consented to the agreement, then Corvette says the district court can enter the order. If you didn't consent and the agreement doesn't cover this, then he can't. It's the same issue, isn't it? Yes. I think that is the same issue. The contract issue and the consent issue wind up collapsing into the same issue when read that way. I agree. You also agree. If your license agreement didn't turn on whether a decision was issued enjoining the other generics, if it didn't turn on, suppose your license agreement said if there's a decision issued or a consent judgment entered, if that's what your original license had said, then you would agree the consent order in this case would have been proper, correct? Because it would have reflected what you would agree to. As a matter of contract law, that may have been. As a matter of adequate hearing, perhaps not. That's not what happened here. But I would still say that if there was a contest about what was and wasn't in the license agreement and what then was in the consent order that was entered, although it was not consented to, there should have been a hearing to determine. I think Judge Moore is asking you if there wasn't any dispute about it. If it said consent injunction pursuant to consent judgment and that was it, then you'd lose, right? Because that would have been what you agreed to. Yes. If the court had entered what we agreed to in the license agreement, then there wouldn't have been a need for, there wouldn't have been a contest. There wouldn't have been a need for a hearing. Here there was a contest. There was a dispute as to what the consent order that was agreed upon said. Well, why do you need a hearing? I mean, your position is the contract, the language is unambiguous. The other side's position is the language is unambiguous. We had a pure contract dispute as a matter of law of the district court to decide that without an evidentiary hearing, no? No. I believe that if a consent judgment, if a consent order is contested, if the meaning of the consent terms are contested, I think the law is clear that a hearing is required. Well, is it ambiguous or unambiguous? It is ambiguous. It's contested, but both sides claim that the language is unambiguous. Why isn't that a matter of question of law that the district court decides? I mean, an evidentiary hearing suggests that there's ambiguity and therefore you need to allow parole evidence and witnesses to discuss what the intent of the parties was. If both parties take the position that the language is unambiguous, why can't the judge decide that as a matter of law? The parties didn't take the position that, both parties did not take the position that this is unambiguous. If I can direct the court to appendix 467, which is a March 26th letter, 2010, from counsel for Sanofi, Sanofi actually takes the position that this language is ambiguous. In fact, in the second paragraph of that letter, counsel for Sanofi says, plaintiff's version of the consent judgment, that is not the consent judgment that was a part of the settlement agreement, but their new unilaterally proposed version. What if the judge had put your consent, the consent judgment, the original consent judgment, the original agreement into this order? Where would we be then? I mean, that was what you wanted him to do, right? If the judge had entered the consent judgment that we had agreed upon, then that would have meant there was a different set of facts in play. That would have meant that there were decisions in joining the other generic manufacturers. But then we'd still be in the same place, no? Fighting over the what decision means? No, I think if I understand your honor's question, if the court had entered our order and the facts supported that, that is, if there had been decisions in joining, then we wouldn't be here. If the court entered that order, but there were not decisions in joining, that is, if the court had interpreted- Their position is that decisions don't require decisions on the merit, the words used in the original consent order. Well, respectfully- Even if that were incorporated into the judge's order here, into the decision we have here, we'd still be in this, wouldn't we, you all still be arguing about what a decision means? If the facts were the same and the order had been entered, that is, if there had never been decisions in joining, but there were, among the other generics, agreements, consent agreements, and the order that was Exhibit A to the settlement agreement was entered, we would still be on appeal, because our position would be that was wrongfully entered, not for the same reasons, although the reasons would be the same if there was never a hearing, but our position would be that on those facts, in the absence of a decision by a court, then the entry of that order would be inappropriate. And to get to Your Honor's point about whether there was ambiguity, you're quite correct, Your Honor, that Sun does not believe there's any ambiguity in the consent order that was agreed upon. Sanofi does. Sanofi says- You're arguing in the alternative that if it's ambiguous, you're entitled to a hearing. Yes. If it's ambiguous, then we're entitled to a hearing. What happened here was a step further than that. Sanofi proposed an ambiguity, proposed a resolution of that ambiguity, the court agreed with it, and there was never a hearing on any of that. What seems to me most interesting here is what's at 209, which is the original term sheet, which was implemented by the settlement agreement. And that term sheet refers to a final court decision. And somehow that language got changed from the time of the original term sheet into the settlement agreement and license agreement. I agree entirely. I think that is an important point. I think that what's contemplated in the letter of intent, it says, quoting, however, in the event a court enters a final court decision, that seems to me to inform, since the word decision is used both places, that seems to me to inform the use of the word decision in the consent order that was ultimately attached as Exhibit A to the settlement agreement. Unfortunately, the court is now raising issues of intent and meaning that were never allowed to be fleshed out, discovered, the subject of an evidentiary hearing. The court simply determined what all of that meant because Sanofi stepped up and said, there is an ambiguity here. We need to clarify. And clarify was the word that it used. So we don't, so there's nothing in the record about the party's negotiations between the time of the term sheet and the settlement agreement? There was no discovery taken. There was no evidentiary hearing. The only thing- You didn't put anything in the back? There were a series of letters that were submitted to the court, not in any particular order. There were quite a number from Sanofi, some from Sun. There was an April 21st hearing before the district court, but there was no record of the proceeding. There was no court report- So no affidavits from anybody who participated in negotiations to what happened in the negotiation between the time of the term sheet and the settlement agreement? There was an affidavit that we submitted from a senior executive in connection with our Rule of 62 motion. But all that says was what his understanding was. Yes. He doesn't talk about the negotiations. No, there is no evidence with respect to what the negotiations were. In fact, Sun asked for an opportunity to put in evidence in its April 15th letter, April 15, 2010, and that request for an evidentiary hearing, which Sun repeated on April 22nd, the day that the order from the district court issued, but before Sun knew. Can I just get some clarification? When you say a final court decision, which is how you're asking us to construe this agreement, you're talking about a final court decision finding the patent valid, enforceable, and infringed by the launch? Is that what you're saying? No, that's the language from the letter of intent. OK, so what is the final court decision doing what? A decision, actually, the language from the consent order that's attached to the contract, that's part of the contract, says decision in joining. And what if, I mean, there are a number of generics on the other side here besides Sun. What if one of those parties stopped infringing? The court would never issue a court decision finding, you know, in joining them because there's no infringement going on any longer. So would that preclude this license agreement ever from, you know, getting off? No, I think what, Your Honor, what you're asking is, did Sun agree to be subject to whatever business arrangement the other generics and Sanofi ultimately agreed to once the other generics were selling at risk? If they decided to stop selling at risk at some point down the road because they had made their own business agreement with Sanofi, would Sun then have to stop? And the answer is no, that wasn't the agreement. Yeah, but I'm asking sort of a slightly different hypothetical, which is why would Sanofi enter into an agreement where if one of the generics just went out of business or went bankrupt at some point after they had done their at-risk launch, then they'd be stuck with you on the market for the whole duration because there would never, it would be an impossibility for there to be a court decision in joining some party who's no longer in business. That hypothetical is, I think, exactly right and should have been contemplated and perhaps was contemplated by Sanofi, but it wasn't the contract that Sun entered into with Sanofi. That's not what the contract said. Your Honor, I'm into my rebuttal time. I think we have one more question. Counsel, you keep talking about the consent judgment that was attached to the settlement containing the language about court decision, and I want to make sure that we're talking about the same consent judgment. Isn't that on page A229 of the appendix? Your Honor, the consent judgment that was attached as Exhibit A, if I can direct your attention to the, is A216, and that references the license agreement, which is also... Counsel, A216 is the agreement. That's not the consent order, dear. 216 is the agreement. I think what Judge Moore is asking is whether the findings of fact and consent judgment order beginning on 227 were what the parties agreed to in connection with the settlement frame. See on page 226 how it says consent judgment, Exhibit A? Yeah. And then on 227, it has the consent judgment. The reason I ask is because this consent judgment doesn't contain the language decision anywhere in it. The word decision doesn't appear. And that's where I was going just a moment ago. The operative language is incorporated in the license agreement, which is referenced at A237. Well, no. 237 is the license agreement. Exactly. It appears on 232, but the original consent order that you proposed and that you would have been happy with does not contain this language about decision. It refers to the licensing agreement. Yes. And you're saying it's referenced to the license agreement. It's incorporating the terms of the license agreement. Yes. But I just want to be clear because the consent judgment that you proposed doesn't have the language that you were quoting to Judge Prost and me earlier. Is that correct? That's correct. The language is found in the license agreement, not on the consent order itself. This consent judgment here that would have enjoined Sun isn't dealing with whether the condition with respect to the consolidated injunction was satisfied. Right. It's dealing only this is only talking about enjoining Sun, not what was involved in the consolidated proceeding. Correct. And this would only be entered in the event under the license agreement that the provisions of Section 3.5 are satisfied. And the key language then in the consent judgment you proposed on page 229 would have been, if I understand it right, paragraph 5 where it says absent authorization by plaintiffs in the license agreement. Yes. Is that right? I just want to make sure we're all working with the same operative language. Exactly. And Your Honor, if I may, well, I'm taking before my rebuttal time if I have any left and I know I've used all the time. We'll give you three minutes. I will confirm my references in the appendix to the proper consent judgment is slightly different than what you're referring to, but I'll confirm that in a moment. Well, I guess that's the question I had because I guess I wondered if what's on page 8227 is different than what's on A354. I'm sorry, A? 354. I don't believe it is, Your Honor. I believe that's the same document. That's why I was confused about the citations because I think, but please tell me if I'm wrong, that there are two documents in the appendix that are the same. Yes, I believe that. In fact, I think there are more than two. So, I think there's some redundancy in the appendix because of the correspondence and the attachments to the correspondence. Okay, all right. Thank you. We'll give you three minutes. Thank you. May it please the court. I'd like to start with addressing where we sort of ended up to make sure everyone is clear. I believe Sun said this morning that the consent order was ambiguous or not ambiguous. It's unclear. In their brief, I don't think they said anything was not ambiguous. Well, I don't think we're talking about the consent order. I think we're talking about license agreement. Well, that's exactly right, Your Honor. That was my point, which is that the consent order does not have the words decision and joining. They've never argued that the consent order was ambiguous or not. The consent order refers over to the license agreement. Exactly right. The license agreement is the issue here. And in that license agreement, not a single term was changed. Well, there was a change from the term sheet to the license agreement. I agree with that, Your Honor. And suppose we were dealing with the language of the term sheet, okay, which refers to final court decision. Would Sun be correct that we don't have a final court decision within the meaning of the term sheet? If the term sheet, yes, Sun would be correct if the term sheet was in the license, but it's not. That limited language was taken out and the actual license agreement just says decision and joining. It doesn't make it so narrow as I have. Why don't we have a situation of ambiguity where there's been a change from the term sheet language to the final agreement language? And the question is, did they mean it to have the same meaning or a different meaning? Why shouldn't we hear for all evidence as to what the negotiations? Well, they haven't put any evidence in that there was some sort of ambiguity based on the term sheet into the final license agreement. So the court was faced. They weren't granted discovery into what you might have that would bear on that. They didn't put any evidence in as to their own. Well, all they did, I mean, they have their own witnesses. They could have put in a declaration and they didn't ask for discovery. Don't talk over me. Sorry. That may be, but why aren't they entitled to find out whether you have a document that says, well, we discussed this during the negotiations and the parties agreed that final court decision and decision in the final agreement mean the same thing? If they could find something like that, that'd be pretty significant, wouldn't it? Not necessarily. Decision has a very clear meaning. It means a, as they say, decision in joining means injunction order. The consent orders are injunction orders. So they seem to say that the decision in joining is a injunction order. That's at page 32 of their brief. And I think that's very clear. That's all that that language- How is it so clear on A612 in your letter to the court, you represent that your version should be substituted for the original consent, for the original consent judgment because, and most important, it clarifies son's obligations under the settlement agreement. Well, why would something that's unambiguous need to be clarified? Well, I think what that is directed to isn't that the settlement agreement is ambiguous. What it's directed to is what are son's obligations under that settlement agreement. And what we were intending to say is that given the known undisputed facts, namely that all the other generics were coming off the market in June 30th, the consent judgment that we purported, that we put in- Which is different from the consent judgment that they agreed to. Exactly. It's different because it takes into account the facts as they existed in April of 2010. And your honor, you're correct. You're entirely correct. We'd be here today on having the same discussion about what does section 3.5 mean even if son's consent order was entered. Yeah, but the problem for you are- is that you resisted the court doing that. So we're looking at something different. We're looking at the court entering the consent judgment for a document that they didn't agree to that was changed based on your representation that it's necessary to clarify it, right? Well, we put it in- we put it in the consent order so that there was clarity as to what son's obligations were. You modified the consent order. Absolutely. It's in the inherent- They had agreed to. Absolutely. And the court hasn't- Does that suggest that the original order wasn't that clear? The original license agreement wasn't that clear. The simple fact that one party disputes something doesn't make it unclear. But you're the one who disputed it. Well, we didn't dispute- Wait. Do not talk over- I apologize, your honor. The fact is that when you wrote this letter, you thought the language of the license agreement talking about decision and injunction wasn't clear, right? No, your honor. We thought it was crystal clear. And we set out in chapter and verse exactly why we thought it was clear. Well, if you thought the original judgment was clear, then why didn't you agree with son that that's what ought to- the district court ought to enter? I mean, you weren't- you weren't willing to have the district court enter in the original consent order, were you? Your honor, the court could have entered in the original consent order- Did you object to that? Did you fight that? Did you resist that? Did you offer up and argue that you ought to put this modified consent judgment in and not the originally agreed to consent judgment? Was that a dispute? Based on the facts of time, we did. Yes, your honor. So there's presumably something different between the original consent judgment and the one that the court ultimately entered. If they were identical, then obviously you wouldn't have resisted the entry of the original judgment, right? Right. And the difference was at the time that the that the original consent order was entered, or excuse me, that was drafted, there were no generics on the market. And the difference is, is that as of August 2009, generics went on the market and we thought that it was appropriate to have the court exercise its inherent authority to interpret the license and modify the consent judgment to be consistent with undisputed facts as they existed. And that's what we were- You wanted the change because now all of a sudden it mattered. It always mattered, your honor. But what- Let me go back. We wouldn't have objected to the following. If three months before March of 2006, the court entered the son's consent order, we would have on March 26 sent in the same letter. The letter wouldn't have changed. We would have said, your honor, the earlier consent order at that time, for hypothetically, there was- the other defendants have not agreed to come off the market. They've now agreed to be enjoined. And so now that you have all these injunctions in front of your honor, we think we want you to interpret the license and we want you to exercise your inherent authority and that we believe the license is clear that son has an obligation to come off the market. Where do we get inherent authority here? Inherent authority to what? To change the agreement that was written before? To decide that there's no difference between- What is the extent of this inherent authority that the district court judge has? Well, in Corvent, this court specifically said that the district court had inherent authority to fill in details of the settlement agreement. We didn't ask any terms to be changed, but in Corvent, this court said that was allowable. He details where there was an agreement between the parties. We don't have an agreement. That's the problem. Well, we do have an agreement. The consent judgment is something the parties submit to the court. At that point in time, once it's submitted, the district court has his own authority to modify the consent judgment. It's a judicial act. And it won't be by consent. If the district court were to modify the terms in a way that's not acceptable to one of the two parties, it's no longer a consent judgment. Well, Your Honor, I think what we were doing, we were asking the court to interpret the license based on undisputed facts. But if that were the case, then you should- Well, it baffles me if your argument were true, why you wouldn't have accepted the original consent judgment to which everyone agreed. The original consent judgment says are hereby enjoined, absent authorization by plaintiffs in the license agreement. The only critical language that was changed is, now it just says are hereby enjoined. Right, Your Honor, the reason we did that is- You don't have the exception to if they're not authorized, if they're authorized by the license agreement to continue practicing because you wanted to take away the question of whether or not this was or was not a decision when there's a consent judgment. Your Honor- That's what you wanted to do and that's what you achieved. Well, the reason we sent the letter in is because we had asked Sun several times, are you going to come off the market on June 30th? They- They said they're going to comply with the license agreement. And they never said what that meant. So we had uncertainty. So we needed to go to the district court to get certainty. Well, if you have uncertainty, you've answered Judge Dyke's original question, which was there was clearly ambiguity. In the absence of any ambiguity, then you wouldn't be taking the position that there's uncertainty. At the time we sent in the letter, Sun never told us what their interpretation of the license was. So we wanted all of those issues to be brought forward- Well, if something needs to be interpreted and in the absence of an interpretation, it's uncertain, isn't that the pure definition of ambiguous? Your Honor, just because a litigant disputes a term doesn't make it uncertain or ambiguous. Well, why does it compel you're changing the language, as Judge Moore pointed out? I mean, if you- Why did it compel you're changing the language to what they had originally consented to? Did they consent to the second one? They didn't consent. No, they did not consent to the second one. So how can it be a consent judgment? How can the district court- I think that's form over substance. I think the district court could have taken the word consent out of it, and it basically would have been his decision that the license, as he interpreted it, was correct based on our interpretation and that Sun needed to come off the market on June 30th, 2010. I don't think it needed the word consent in it at all. I think it was a judicial decision. But under the consent judgment, your position is also that they've waived their right to appeal it. So you're saying he could take the word consent out, just issue this order, and joining it because of his construction of the original consent agreement? He could have taken the word consent out and put in the injunction based on the original license terms. And we've never argued that they didn't have the right to appeal here. We've never made that argument. It does say that, but we never made it. Excuse me? Well, it's in the consent agreement. It is in the consent agreement, but we've never made an argument. So you're saying they should do what they're clearly precluded from doing under the clear language of the consent agreement and try to appeal it and that's OK because you're telling us you wouldn't oppose it? Well, we haven't opposed it. So, I mean, the fact that that language remained in the version that Judge Pisano entered, I don't think is, I think if anything, at most it's harmless error. Judge Pisano actually wrote a decision in this case and he said, I agree that the language in 3.5 is clear that the key language is injunctions entered. Well, the question is whether he was wrong. Your Honor, that's correct. That's the question is whether it's wrong. And let me ask you a question. Suppose that the defendants in the consolidated case had not, in fact, been enjoined. Suppose they had just agreed to stop the at-risk launch, right? They'd stop selling. Would you have a right to get an injunction against Sun under those circumstances? We would not. And in fact, that's part of what the draft in January 2010 was designed to address. Was it trying to give more flexibility that whatever the court entered may not have an injunction in it. If you go and you look. Why would the parties want to distinguish between a situation in which they stopped by agreement and a situation in which they agreed to an injunction? It goes back to the confidentiality issues and exchanging all these agreements. I don't understand what that is. There were eight defendants in this case. The negotiations were long. You're not answering my question. My question is this. Why would the parties want to distinguish between a situation in which the consolidated defendants by agreement agreed to stop selling and you agree that under those circumstances, Sun could continue and a situation in which there was such an agreement, which then resulted in a consent judgment, an injunction, in which event you contend that Sun can't continue. Why would the parties want to distinguish between those two situations? So by putting an injunction into the decision, it would be on the public record. Sun would know that all of the defendants, in fact, were enjoined as of that date, as opposed to having to go back and give Sun all the agreements and have them come back and say, well, we don't agree. There's some clause in here that lets them go on in some other hypothetical or some other situation. It's much clearer to have all the defendants being joined on a particular date in the consent judgment because then that's on the public record. Everybody knows where they stand. We don't get into any arguments about whether this other license agreement is different than that license agreement. So that was the intention of 3.5 was that it would be a public record that all the defendants were enjoined and that was the purpose of putting it in that way. You could have done it the other way. We consider doing it the other way. That's what the January 2010 modification did. It expanded decision even beyond injunctions. It simply says that if the court enters an order and the defendants agree to come off, that would be enough pursuant to the order, even if it's not in, even if the order doesn't have an injunction. But at the end of the day, the original version of the license didn't have that language in it. It had the requirement was that there be an injunction and it makes it cleaner if there was an injunction. Ultimately, all the defendants agreed to be enjoined. It's all on the public record. Well, some didn't and some was the first to settle with you. So they got more favorable terms because they were the first. Actually, they were not. They were not the first. The first to settle was Ebebe. OK, but they settled in advance of all of these other defendants that you're talking about enjoining them in light of. Now, why would Sun tell me why would Sun enter an agreement, agreeing to be enjoined when everyone else enters a consent judgment? Because I understand from the original sheet on page 809, why they would agree to be enjoined and pull off the market if there's a final court decision by someone on the merits. But I don't understand what do they get out of the agreement if they're agreeing to be enjoined? I just I don't see it as a good bargain for them. But maybe I'm wrong. I'm missing something. And well, I think we have to take into account both sides of the bargain here. The bargain with all the defendants was essentially the same. Either everybody was in the market or none of them were in the market. No, no, no. That's not true because you just agreed that if the consolidated defense by agreement without an injunction had agreed to exit the market, Sun would still be able to sell. And so, well, we would never agree to that, Your Honor. That's the point. We would never agree to that. We did agree to that. You agreed that if the other defendants exited the market without an injunction or a court decision that Sun could continue to sell. You said that earlier. Right, Your Honor. But we never actually made that agreement. There's no place where we agreed with any other defendants that they could just by agreement come off the market. May I address it? There's a very important point. And if, in fact, Sun stayed on the market, all the generics could stay on the market with them. That's the way these are designed. It's not just us. It's the generics, too. They all said if one generics on the market, we all have to be on the market. Otherwise, there's no deal. Counsel, I understand. You've made your point well, why Sanofi would have only entered into an agreement like the one you're proposing the agreement should be construed as. But I likewise understand Sun's argument why it would never have entered into agreement where the other generics voluntarily got off only if they were forced off by a court decision on the merits. And so the problem is, why doesn't that exactly equal the kind of ambiguity? Because I can see both sides. You never did answer my question and give me any reason why Sun would have been tempted to enter the agreement as you construe it as opposed to as they construe it. If Sun's construction, if we construed the same way Sun did, we would never enter into that agreement. If they do it the way you do, they wouldn't enter into it. Not necessarily. It doesn't hurt them one way or another. It doesn't hurt them. They're not on the market. The point is, is in terms of this market, it would not have an effect on them. The reason is, is because they're going to be in the same place on August 2011 as August 2012 if all the generics are in the market. They're going to be competing against all the other generics. So the real issue for them. But they're in the market. They're not in the market now. They're in the market. That's the big difference, isn't it? No, because the issue is, is they're not in the market by themselves. Yeah, but they wouldn't be in the market at all if it wasn't somehow efficient or cost effective for them. That's how markets work. Right. So now they're not in the market. They'd be in the market. Isn't that in and of itself enough of a difference? No, the actual reality, in my view, Your Honor, the reality here is that what you have is a situation where you have to look at both sides. You can't just say, well, would this be a good deal for Sun? It might be a good deal for Sun, but we'd never agree to it. And we'd never agree to it because we had to have the protection we talked about in our brief. Either we had it laid out. If that's true, then why did you enter into the term sheet the way it was written, talking about a final court decision? The term sheet's not binding, Your Honor. No, no, no. But that's not the question. The question is whether you would enter into an agreement like that. You said you wouldn't, but you seem to have in the term sheet. Right, Your Honor. And as the letter of intent says, the term sheet itself is not binding. And when we got into the negotiations, it went from the very narrow definition of decisions and joining to a much, to a broader one, because during the process of negotiation, we switched, we went to this broader term. I don't think that's, I don't, we weren't bound by what was in the term sheet. And if anything, the term sheet shows that the parties agreed to have a broader definition of decision and joining. Why isn't the right inference from the change of the language that the decision no longer had to be final? That is not subject to appeal, but it still had to be a decision by the district court. Because it says it has to be a fine, the actual term sheet says in it that the, let me just, I lost the language, excuse me. Right, it says a finding that the patent is valid, enforceable, and infringed. So it actually says that there had to be that particular type of finding before the son would agree to be enjoined. So it's actually fairly narrow in our view. And if anything, the term sheet, the change in the term sheet, if anything, shows that what was, what the intent of the parties is a broader definition of decision and joining, not decision on the merits, which in their brief, they say a lot about collateral estoppel  But consent judgments can have collateral estoppel effect as well. And final decisions on the merits may or may not have collateral estoppel effect, depending on what the subsequent case is. Counsel, could we decide that, at a minimum, the term is ambiguous and parole evidence should have been entered should we order the lower court to vacate the existing injunction while they make that determination? Absolutely not. We would ask that you maintain the status quo, given the severity here. As your honor knows, we, back in June of 2009, we asked for a stay of a judgment when the non-infringement decision came in. This court granted the stay. As part of granting the stay, we proved there was irreparable harm. The same harm that would have occurred in June 2009 would occur tomorrow if you were to instruct a district court to vacate the judgment. We ask that if you'd go that path, which we don't think you should, if you go that path, that you specifically instructed the district court to maintain the injunction and to hold expedited proceedings to resolve this issue, which we, of course, would agree to. If we vacate, what happens to the other consent judgments for all the other parties? If we were to vacate, do they just blow up because they're predicated on the... Is that the problem here? Exactly, your honor. If you vacate the injunction, there's no longer an injunction in place, then all the other defendants are going to say, well, son's not enjoined. I guess the only caveat to that would be son would still have to launch, arguably, but they wouldn't be precluded from launching. And so the other defendants are likely to argue that, well, we can launch since there's no injunction, since son's not enjoined. Just, I thought I saw one of the agreements somewhere, maybe with the other party, that if something doesn't happen by March 2011, then everything kind of is blown up. So if we were to hold the hearing and there weren't a final decision on this, like a final judgment on this case, whatever posture it's in, and by March 2011, is this all moot? Actually, I wouldn't say moot. It would be... Originally, that was partially contemplated because we thought, originally, under the original consent order, we were going to have to go back to Judge Pisano and get clarity on under the license. We didn't know how long that would take. And all the parties said, well, if it takes until March 2011, then all these agreements are no longer in effect. And everyone goes back to essentially the square one, which means we're back at the district court litigating the substantive issues, potentially. So arguably, and I haven't gone back and looked at that particular question, Judge Prost, but if this court were to vacate the judgment and there wasn't a new... And if there wasn't a new judgment entered by March 2011, it arguably could make this case start anew. But even if we didn't vacate, if there's no final judgment on this whole thing, I mean, even if we kept it in place but sent it back to the district court for a hearing, got it on, then it comes back on appeal, there's no final decision by March 2011, right? Correct. There'd still be no final decision. I'm not sure the language... I'd have to look at that specific language, but you're right, there was a provision because we were concerned. We didn't know how long it would take to find out whether a court would enforce the license as we suspected it should. And there is a provision in the license agreements and they're in the consent judgments with the other defendants that talk about removing the injunctions against those defendants  and at which time all the parties would be able to re-litigate the case. Okay, thank you. Thank you, Your Honor. We'll give you five minutes since we went over to the other side. Thank you, Judge. Although I really just have a couple of quick points to make, so unless the panel has questions. But address the March 2011 date, what the significance of that is. Unfortunately, I'm not able to. I just don't have that in mind. Why don't you both give us a letter, not to exceed two pages, addressing that issue as to what the significance of the March 2011 date is and if there's no decision on this by that point. Why don't you give us that in a week? We will do that. Your Honor, a couple of quick points other than responding to any additional questions you may have. Most of what Mr. Conde just said was essentially eliciting testimony with respect to what the meaning of all of this was, what the meaning of the agreements is, what the meaning of the negotiations had been. It was testimony that should have been elicited from real witnesses at the district court level to determine what should have been done with these contracts. So what, I mean, I know we're going over some of it. But what happens, we send this back, the district court has this due process hearing and he concludes that the other side is right, that the term decision doesn't mean what you say it means. Where does that leave you? Then you run up here and appeal that? I don't know. It would depend on the record and depend on what we would determine if there were any errors made and what the district court did. But what I can tell you straight away is that it absolutely has to happen in our view and that in the interim, there is no basis for an injunction to continue to pen. Mr. Conde said that, yes, the injunction should continue to pen in order to preserve the status quo. But the injunction is in itself a disturbance of the status quo. The injunction was supposed to preserve the status quo in the first instance. That's the purpose of an injunction. And it didn't happen here. It disturbed the status quo. A new order was entered, a consent. You were on the market before the injunction was entered. Had you lodged? I believe so. I believe that's right. I thought you left in January of 2010. I believe that that's correct. I'll have to check. Okay. So you launched and the injunction went into effect making you come back off the market. Yes. And so if we found that there was ambiguity that necessitated parole evidence, are you asking the court to instruct the lower court to vacate the injunction? Yes. And then what happens next would be up to the district court. I suppose the court could, as Mr. Condi said, convene an expedited hearing with discovery. The parties would move very quickly. But there doesn't seem to be any basis in our view for a finding of reversal and a continued injunction in place. Well, the basis would be there's ambiguity. The basis would be there's ambiguity in the settlement agreement. First, there are many other bases upon which we're asking for reversal. And secondly, I don't know that the presence of ambiguity without evidence renders an injunction properly ever. Well, what you're saying is you'd have to satisfy the standard for a preliminary injunction, which would be they'd have to show a probability of success on the merit. Yes. I think the presence of ambiguity negates the possibility of an injunction. There would have to be a clear finding. Wouldn't it be best if we left that up to the lower court to decide if we were going to vacate and remand because it was ambiguous, we leave it up to the lower court to decide whether to continue the injunction or to lift it? Like all those factors which we don't have in evidence before us. Our view is that the injunction was not properly issued. And so if the lower court opinion is reversed, the order has to be vacated. Now, whether the district court very quickly reconvenes and decides for itself whether to reissue an injunction on an appropriate record is a separate matter. But in our view, if this court reverses, then the injunction should fall. Okay, anything else? Nothing else. Thank you very much. Thank you, counsel. The case is submitted. That concludes our session for this morning.